Curia, per
Nott, J.
I think it is very obvious from the course of the argument, that views of this case have presented themselves to the minds of the counsel on *324 both sides, which had not occurred to them in the.Court {je]ow . anj it has been'the invariable rule of this Court, n°l to entertain a motion to reverse the decision of the Chancellor of the Circuit Court, on a ground not taken in that Court, unless such ground has been added by special permission of this Court first obtained ; or it appears on the face of the proceedings and goes to the whole merits of the case, such as a want of jurisdiction; or as in a Court of Law would be a ground in arrest of judgment. The principal ground relied on in the argument is, that the complainant, as a creditor, cannot maintain a bill against the defendants for an account. That, where there is no executor or administrator, the party himself must administer to enable him to collect the funds of the estate. It is true that there is no principle law better settled than that personal property does not descend to the heir at law. And although according to the act of 1791 real and personal are both distributable in the same manner, the personal estate does not technically descend. It vests in the executor or administrator for the purposes of distribution, who thereby becomes a trustee for those who are ultimately to receive it. He is the only organ through whom their rights can be ascertained, and the law requires the formality of an administration as necessary to the security of those rights(1). In the case of Humphries v. Humphries, 3 P. Wms, 348, it was held that a bill for an account of the personal estate could not be maintained without administration actually taken out, although the person who had the right of administration was a party. In the case of Ashhurst v. Eyer, 2 Atk. 51, it is said that a bill for the discovery of assets was dismissed upon a plea that the administrator was not a party, although it was admitted *325 that he was insolvent. In the same case, 3 Atk. 341, the Reporter remarks, that the plea was allowed : but it does not appear that the bill was dismissed. That is not material as it regards the principal question. It is sufficient that the complainant was not allowed to proceed without making him a party. And in the case of Elliot v. Drayton, 3 Desaus. Rep. 29, it was held, that an executor must be called to an account before a creditor could have recourse to a legatee. In Cooper’s Equity Pleading, 34, it is said that all trustees, tors, &c. must be parties to a suit for the payment of legacies, annuities, marshalling of assets, &c. ° ° 7 all these authorities, as well as from the general principles of law, it is manifest, that an executor or administrator is generally the only organ through whom a creditor can get the funds of an estate, and is the only person to whom a debtor is answerable.
Personal pro-descend toDOt lawheil'at
An executor tains the'oniy rights of the can be tained, and there must be administra-tI0n’
generally admiSsaator1' the ?rib , organ through whom a cred-the fund.f’ofan ^om a°deb°t or is answer-
whefetVe eK~ ecutor is a bankrupt and not aCl"
legateetopro-debtoMhera3 must be some cumstances, &c.
in what cases a?blll,™a7 be brought by a creditor ' against a legatee.
There are however special cases which form an ception to the rule.. In the case of Burrows v. Elton, 11 Ves. Jun. 29, a creditor was allowed to file a bill in behalf of himself and other creditors, for the purpose getting in the funds of the estate, and to have a receiver appointed, where the executor was a bankrupt, and would not act. But even in that case it was necessary to make the executor a party. In the case of Alsager v. Rowley, 6 Ves. 750, Lord Eldon said, there cannot be a bill by a legatee against a debtor except in a special case; for there can regularly be no suit against the debtor but by the executor, who has the right both in law and equity ; but that in order to authorize such a proceeding there must be collusion, or insolvency, or some special case.
The next question is, what will constitute such special case, and does this come within the rule■ In the case of Heath v. Percival, 1 P. Wms, 683, it was held that . . bill by a creditor against a residuary legatee might be *326 sustained without making the executor a party where he jjacj been outlawed and after inquiry could not be found. And a bill may be brought against an heir for the dis-covery of real assets for the purpose of pursuing a debt, upon suggesting that the representative is contesting in the Ecclesiastical Court. Plunket v. Penton, 2 Atk. 51. It has been decided in our own Courts that a cred-^01' may follow the land in the hands of the heir when the executor is dead and insolvent. Higginson v. Air, 1 Desaus. Rep. 427. And in the case of Riddle v. Mandeville, 5 Cranch, 330, it is said a bill may be sustained by a credi-itor against a legatee when the executor is insolvent, be-cause he will be ultimately responsible. If that is a correct position then perhaps this bill may be supported on that ground; for the defendants are the heirs and personal representatives of Bailey Forrester, C. C. Forres-ter, Susannah Forrester, and Alexander Forrester, so that if either of those persons were liable, the responsibility must ultimately fall upon these defendants. But in that view of the subject, it would appear to me, it ought to be suggested that there are no other creditors, or the bill ought to have been brought in behalf of all the creditors.
A creditor iandshfthe hands of an executorff10 vent 0IBut01' thebjli should behaif of^ai/n the creditors,
To make a executorde*8 son tort he as executor,
It is contended that the defendants are liable as executors in their own wrong, and the act of 1789, 1 Brev. 337, is relied on in support of thál! ground. But that act does not declare what shall constitute pn executor de son tort. It only provides, that where a person has made himself liable as such he may be. sued and made Rnswer'able in the same manner as if he had been alaw-fui executor or administrator. But in that case he must be sued as executor. , This bill; therefore, will not enable us to consider that question, nor has the evidence offered been such as to authorize us to conclude that the defendants could have been made liable in that charac-,- *327 ter. Indeed it is obvious that the complainant did not originally contemplate such a ground of liability.
The strong ground on which the defendants appeared to rely in the Court below, and which is made the principal ground of appeal to this Court, and which appears to have been thought by the Chancellor an important one in the case, is, that Mrs Forrester, the executrix of C. C. Forrester, had fully administered his estate. The Commissioner, after a critical investigation of the case, came to the conclusion that the estate had been fully administered. To that part of the report there wás an exception which has been sustained by the Chancellor.
Many years have elapsed since the death of C. C. Forrester. All the parties are dead who might be supposed acquainted with the transactions of his estate. The defendants, one of whom is still a minor, could not be expected to possess the means of explaining complicated transactions of that sort. The Chancellor, however, appears to have been mistaken in supposing that Mrs Forrester had no property, except what she derived from her husband, or from the proceeds of his estate. The circumstance of her having left considerable property to his children, therefore, does not authorize the inference that she had not fully and honestly administered. We are, however, now released from the consideration of that question, as it is admitted by the complainants that she had fully administered. And where the parties agree as to any particular fact which might otherwise appear doubtful and difficult to be ascertained, the Court will feel no obligation to inquire into the truth of the admission. The case therefore is stripped of many of the difficulties which appeared at first to have been presented to the Court, and most of the observations which have been made might have been spared, but for the purpose of settling some of the principles involved in the discussion.
Still unset-administrators may exercise control over theirTeítator or intestate,
It still remains to be determined whether the complainants can avail themselves of the proceeds of certain lands belonging to C. C. Forrester, which, it appears by rep0rt 0f the Commissioner, have been sold, and which have come into the hands of these defendants. On this question we can expect to obtain but little information from the English books; as lands in that country are not subject to the payment of debts, except in particular cases where the heir is bound by contract. But it appears by the case of Plunket v. Penton, above quoted, that a bill may be brought by a creditor against an heir for the discovery of real assets, where there is a contest in the Ecclesiastical Court respecting the personal estate. And in the case of Higginson v. Air, 1 Desaus. Rep. 427, it was decided, that a creditor might follow the lands of the debtor into the hands of the heir when the executor died insolvent. That case appears conclusive of this; for although the executrix did not die insolvent, yet she had fully administered, and the creditor therefore had no resource except to the land which the executrix could not dispose of in the course of the administration, not being so authorized by the will. It is contended that by the act of 1759, P. Laws, 250, 2 Brev. 1, lands ar.e made assets for the payment of debts, and are equally at the disposal of the executor as personal estate. How far executors and administrators have the management of, or may exercise any control over, lands of their testator or intestate in this state remains. as far as I am informed, still to be settled. They . . . . cannot even sell the personal estate without permission °f ^1<3 Ordinary. The Ordinary is authorized to sell the perishable property only, except for the purpose of distribution or payment of debts. But from the nature of a part of the property of this estate the executor must necessarily exercise some control over the real estate. *329 Slaves cannot in most instances be well employed, except in the cultivation of the land where the testator dies possessed of lands. They must therefore be employed under the superintendence of the executor. That would seem to impose upon him the necessity of employ- . . ... _ . mg overseers, paying taxes, receiving the profits, and generally superintending the whole economy of the plantation. But it gives no power to sell, nor does he derive any from the act of the legislature. The act makes lands, houses, &c. assets for the payment of debts in like manner as real estates are by the law of England liable to the satisfaction of debts due by bond or other specialty, and they may be seized on and sold for that purpose. The executor may be the organ through which the land J ° may be sold, by obtaining a judgment for that purpose on a suit against him. If therefore there had been any executor or administrator, against whom an action could have been brought, the complainants might not have been driven to the necessity of resorting to the Court of Equity. It is said the complainants are the executors of C. C. For-Tester, and although they have never qualified, they must be regarded as the legal representatives of the estate, Admitting that to be a correct position, it would not , „ , , . _ , , the case ; for being the representatives of both estates they could not sue themselves. And the method which they have now adopted was the only course which could have been pursued. I am of opinion, therefore, that the bill was properly sustained. I do not however rest my opinion on the ground that these defendants must in any event be ultimately responsible, but upon the ground that the personal estate had been fully administered by the executrix in her life time, and that the land was the only available fund out of, which the debt could be paid. And .the necessity of resorting to this proceeding is increased by the circumstances of the *330 land having been sold.and the proceeds paid over to the defendants. This view of the subject dispenses with the necessity of a particular consideration of the first, se-con(]j an(j third grounds of exception to the decree.
Lands may a judgment6' obtained against an executor or ad-b™ when1’ tb°re *s 110 administrator agatasTanheir ** lfhe lands which ^received personal estate being fully admims-tered‘
*330 With regard to the fourth ground, this does not appear to be what in contemplation of law is considered a stale claim. ' The executrix continued making payments until the year 1814. In the year 1817 she died. The estate was probably considered at that time insolvent, and so it might have been, as it is now admitted that the personal estate was fully administered in her life time. In 1820 the land was sold at the instance of these defendants. That in all probability was the first intimation that the complainants had that such a fund remained for the payment of their debt. But still it was necessary first to call the administrator of Mrs Forrester to an account. A bill for that purpose was filed in the year 1822, which abated by his death. In the year 1823 the present bill was filed. The complainants’ testator has also died, so that there does not appear to have been any such want of vigilance on the part of the complainants as made it the duty of the Chancellor to reject the account on the ground, of its being a stale demand.
The fifth exception to the decree is, that the bill was filed to recover a security debt, which is alone mentioned in the bill, and that so much of the decree as allows a fifty-two pound debt of a distinct nature is erroneous. By a reference to the account current rendered in this case, it appears that the whole of complainants’ demand is for money paid by his testator to Douglass and Shaw, on account of the security debt, except £16 19s. 2d., the balance of a former account, of the nature of which we are not informed, and an item of £1 19s.,' being so much paid for C. C. Forrester for the storage of gunpowder. These are the only two items therefore' which can be embraced in the exception. ■ And it goes more to the *331 form of the bill than to the substance of the demand; for the Commissioner reports that the account was clearly established, and it is not now pretended that it was not satisfactorily proved. But as it is contended that the object of the bill professes to be for advances made on account of the specific debt of Douglass and Shaio, and no other, the other charges ought not to be taken into the calculation. It appears that these items constitute the part of a general balance of an account brought down from the year 1804 to the 21st of February 1814. Several payments have been made in the mean time. A balance has been struck at the time of each payment, allowing interest on those balances up to the time of the last payment. All the receipts, up to the 10th of April 1810 inclusive, specify particularly that the payment was made on account of the debt due to Douglass and Shaw. If the account stopped here I should think it at least doubtful whether the disputed accounts could be recovered; because the payments having been made on account of the specific debt of Douglass and Shaw could not extinguish the other demand. And those demands not being specified in the bill ought not to have bpen taken into the calculation by the Commissioner. . In February 1814 Mrs Forres-ter made a payment on the general account, without specifying to which particular part of the demand it should be applied. The interest on the whole account was then calculated and a balance struck. The complainant had a right to apply the payment to such part of the account as he thought proper, He did apply it to the extinguishment of the private debt, as appears by his charging the balance as due on account of the debt of Douglass and Shaw. Mrs Forrester might perhaps then have objected to the payment of interest on that part of the account. Or she may have considered it one on which interest ought to have been paid. However *332 that may be, she consented to have it settled in thatman-ner. There was nothing unjust nor unconscientious in it. The Court will not suffer an account of twenty years standing to be unravelled at this late day, to give the party a benefit of a mere formal exception. The whole may be considered as extinguished, except the tbe European debt which is now sued for. The complainants therefore are entitled to a decree for amount, with the interest upon it, to be paid out of the proceeds of the land which have come into the hands of the defendants since the death of the executrix.
will not standing to a mere formal
It is ordered and decreed, that the defendants do account for the proceeds of the Stony creek land, with interest thereon, from the time the same came into their hands, and that it be referred to the Commissioner to ascertain the time when the same was received, and the amount received by each respectively. And that the same.be paid over to the complainants, or so much thereof as shall be necessary to pay and satisfy their demand, with the interest due thereon, in proportion to the amount respectively received by each defendant. And that the costs be paid in the same proportion out of the said fund. And that so much of the Chancellor’s decree as conflicts with this decree be reversed.

Decree modified.

 See Farly v. Farly, and Bradford v. Felder, Columbia, January 1827.